UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON

**DOMESTIC VIOLENCE SURVIVORS
SUPPORT GROUP, Inc., d/b/a DOMESTIC
VIOLENCE COUNSELING CENTER, and
ELIZABETH CRAWFORD,**

    Plaintiffs,

vs.       Civil Action No. 2:18-cv-00452

**BILL E. CROUCH, in his official capacity as
Secretary of the West Virginia Department
of Health and Human Resources, PATRICIA BAILEY,
individually and in her official capacity as Chairperson of the
Family Protection Services Board, an entity of the West Virginia
Department of Health and Human Resources, WEST VIRGINIA
DEPARTMENT OF HEALTH AND HUMAN RESOURCES, the
FAMILY PROTECTION SERVICES BOARD, and WEST VIRGINIA
VIRGINIA COALITION AGAINST DOMESTIC VIOLENCE, INC.,**

    Defendants.

## COMPLAINT

1) Plaintiff, Domestic Violence Survivors Support group, Inc., doing business as the Domestic Violence Counseling Center (DVCC), is a nonprofit West Virginia corporation with its principle offices on the west side of Charleston, West Virginia established 1995.

2) The other plaintiff, Elizabeth Crawford, is an African American female who founded DVCC and is its executive director as well as an educator, counselor and therapist with that organization.

3) The primary functions and purposes of DVCC include, but are not limited to, providing emotional trauma recovery counseling, education and prevention to domestic violence victims and domestic violence offenders emphasizing those with African-American backgrounds.

4) Additional functions and purposes of DVCC include, but are also not limited to, providing the same above services for victims of other crimes or traumatic events and presenting domestic violence prevention workshops, seminars and presentations.

5) Defendant Bill E. Crouch is Secretary of the West Virginia Department of Health Human Resources (DHHR), a state government agency that is also a defendant with responsibilities pertinent to this action for licensing applicants as domestic violence centers as set forth in the West Virginia Domestic Violence Act, West Virginia Code 48-26-101, et seq.

6) Defendant Patricia Bailey is Chairperson of the (West Virginia) Family Protection Services Board, also a named defendant, created pursuant to West Virginia Code 48-26-301 as part of the foregoing Domestic Violence Act, as that entity of DHHR responsible for issuing licenses for domestic violence centers/domestic violence programs.

7) Defendant West Virginia Coalition Against Domestic Violence, Inc. is a non profit West Virginia corporation with its primary office in Elkview, West Virginia with licensed domestic violence centers in the state as members as well as contractors to the state and engaged in actionable conduct toward plaintiffs as later addressed here.

8) May 18, 2017 DVCC Director and Counselor Elizabeth Crawford submitted a pre-application for DVCC to be licensed by the Family Protection Services Board as a domestic violence program pursuant to the West Virginia Domestic Violence Act, Article 26, Chapter 48 of the West Virginia Code.

9) By letter dated June 30, 2017 Patricia Bailey invited Elizabeth Crawford to an open meeting July 14, 2017 to discuss services provided by DVCC and its pre-application.

10) Ms. Crawford attended the foregoing meeting accompanied by her attorney in this action as well as Scott McClanahan, a volunteer consultant particularly familiar with DVCC's mission and the prevalence of domestic violence and other criminal acts in the African-American community and population at large on Charleston's west side.

11) From that meeting it was abundantly clear Ms. Bailey was adamantly convinced as were all others DVCC did not have a shelter component, although Ms. Bailey could not answer why the applicable statute simply did not simply state "shelter" instead of using a more ambiguous term "shelter component" to justify her official and personal animosity toward Ms. Crawford and her organization that was readily apparent.

12) Even distinguished law professor Robert Bastress, who was on the panel, did dispute or question Ms. Crawford's argument or that of her lawyer regarding the assertion stated in the preceding paragraph.

13) At this meeting at least one board member was visibly offended the pre-application

alleged discrimination on the basis of race had caused the Board's previous denials of DVCC's licensing efforts, to which Ms. Crawford responded racial discrimination offended her as well.

14)     By letter from Ms. Bailey dated July 18, 2017 the Family Protection Services Board denied DVCC a license as a domestic violence program under West Virginia Code 48-26-208 stating its pre-application did not reflect a "shelter component" deliberately misconstruing the applicable state statute and state code definition once more to achieve its objective of discriminating against DVCC and Ms. Crawford on the basis of race.

15)     According to West Virginia Code 48-26-208 a licensed domestic violence program must comprise both a "shelter component" and "outreach component" for victims of domestic violence, dating violence, sexual assault, stalking or human trafficking, and their children.

16)     There is no definition for a "shelter component" in the relevant portion of the West Virginia State Code or anywhere else in the Code for that matter.

17)     There is a definition in West Virginia Code 48-26-214 of a "shelter" as "residential services offered by licensed domestic violence program on a temporary basis to persons who are victims of domestic violence, dating violence, sexual assault, stalking or human trafficking and their children."

18)     Thus the Family Protection Services Board denied DVCC's pre-application for the ostensible reason it did not have a physical shelter for victims of domestic violence, yet

the statute refers to a shelter component, not an actual (physical) shelter, otherwise it would have simply stated such.

19) Plaintiff DVCC, contrary to the subject denial letter, has a shelter component where under appropriate and necessary circumstances it refers victims of domestic violence to licensed, existing shelters, which routinely accept the victims in a manner similar to hospitals accepting referrals from physicians, and this was clearly set forth in the pre-application as well as explained by Ms. Crawford at the meeting.

20) The above statute was amended in 2014 at the request of certain defendants and the Coalition to add the language "shelter component" as an additional deterrent to DVCC obtaining a license, although previous applications for licensing by DVCC prior to the preceding amendment had also been denied for its not having a physical shelter. However, even such in-house, legerdemain does not preclude or refute the fact DVCC has a shelter component and exercises that component as circumstances warrant.

21) The West Virginia Domestic Violence Act provides an appeal process for existing licensed domestic violence programs, but there is no similar process for entities as DVCC applying to become licensed in the first place thus further prejudicing the plaintiffs.

22) Defendant Bailey as well as her predecessor smugly informed Ms. Crawford there was no provision for appeal of the Board's decision in this matter.

23) The Family Protection Services Board has denied previous DVCC applications for a license in 1996, 2013, 2015 and 2016 leaving the plaintiffs no other recourse than

to seek court intervention.

24) Located in the largest minority neighborhood of West Virginia's largest city, over half the victims of domestic violence DVCC has counseled since it began operations in 1995 have been African Americans.

25) According to a United States Department of Justice Survey 29% of African American women and 12% of African American men have been victims of domestic violence, yet the defendants ignore or are oblivious to these statistics with their inexplicable, illogical and relentless discrimination of the plaintiffs. *Homicide Trends in the United States, 1980 -2008, USDOJ Nov. 2011*

26) A third of the domestic violence homicides annually in the United States involve African Americans, a rate six times greater than for Caucasians, yet this figure is meaningless to the defendants in their discriminatory zeal to exclude the plaintiffs from efforts to combat domestic violence particularly in the minority community of Charleston's west side notwithstanding the area's notoriety for violent, criminal behavior. *Id.*

27) In 2008 43% of all homicides perpetrated against African American females were attributed to domestic violence; yet defendants have persisted in discriminating against the plaintiffs rather than welcoming them as allies in the effort. *Id.*

28) African American victims of domestic violence confront numerous obstacles in seeking professional intervention that include concern for discrimination, racial stereotyping, distrust of law enforcement officers, and economic uncertainty as well as a

6

cultural and spiritual background that inhibits recourse to professional counseling, of which the most that could be said of the defendants is they are benign in their neglect and ignorance of these cultural traits or simply uncaring because of their longstanding animosity toward the plaintiffs.

29) Many African-Americans perhaps understandably prefer to receive professional counseling for domestic violence from individuals who are also African-American as is Ms. Crawford as opposed to those agencies defendants favor who have historically utilized (and continue to do so) most African Americans in subordinate or token roles as opposed to plaintiffs who proudly function with professional persons of color.

30) Notwithstanding the focus of DVCC with African-Americans, yet welcoming of all races and ethnic groups, defendants have historically and continue to discriminate against this agency and its director on the basis of race.

31) The plaintiffs' approach of treating the symptoms of domestic violence as opposed to the defendants' "warehousing" strategy that favors simply temporarily housing victims of domestic violence, a practice that only perpetuates the problem yet allows local, state, federal and private funding to continue for defendants and further allows them to continue discriminating against the plaintiffs.

32) Instead of an "all hands on deck" approach to confronting the scourge of domestic violence the defendants racially discriminate against the plaintiffs limiting the options of African American victims of domestic violence who might prefer genuine counseling

from persons of their own race, and shelter component, if necessary, as opposed to those who purport to know what is good for others as defendants yet often only addressing the symptoms of domestic violence yet in reality simply perpetuating the problem.

33) DVCC is the only domestic violence program in the state with a Certificate of Need from the West Virginia Health Care Authority declaring the need for behavioral health treatment and services for those suffering from violence-related emotional trauma. DVCC is also the only domestic violence program in the state which has a West Virginia Department of Health and Human Resources OHFLAC (Office of Health Facilities Licensure and Certification) license to provide behavioral health treatment and and services to domestic violence victims.

34) Defendant West Virginia Coalition Against Domestic Violence through past years and up to the present as an organization and through its various members have aided and abetted the other defendants in their discrimination of the plaintiffs who have likewise been engaged in the struggle against domestic violence notwithstanding this particular defendant's discriminatory conduct and that of certain various members bent on hindering the plaintiffs' efforts.

35) Conduct by the defendant Coalition includes the collective spreading by certain members throughout the community of rumors and innuendo using that membership stating repeatedly that DVCC is not a licensed domestic violence center, Ms. Crawford is somehow ill qualified and thus DVCC constitutes an unsafe, unfit organization for counseling victims of domestic violence and seem for inexplicable reasons to take great

pleasure in promoting these rumors.

36) Coalition members over the years and up to the present have taken it upon themselves and using the influence of the Coalition in the community at large to lobby and persuade public officials to deny DVCC public funding and rercognition..

37) Former director of Charleston YWCA Resolve Family Abuse Domestic Violence Program and Coalition member as Georgeann Grubb have used their status with the Coalition to depict DVCC as a "rogue organization" because it treats males victims of domestic violence as well as female victims.

38) Members of the Coalition used the influence of the organization to persuade officials of the West Virginia Court of Claims through its Crime Victims Fund not to reimburse DVCC from this Fund for crime victims who had obtained counseling from DVCC.

39) The hostility of certain Coalition members again using the status of that organization is such some members as then-Coalition co-coordinator Sue Julian has even been verbally and emotionally abusive toward plaintiff Crawford at a public event at the state capitol relating to domestic violence.

40) These certain members of the Coalition have also been duplicitous toward Ms. Crawford and DVCC as to when such events such as at the state capitol are occurring in an effort to exclude Ms. Crawford and other persons affiliated with DVCC.

41) In some public events regarding domestic violence such as at West Virginia State University certain members of the Coalition used their positions within the Coalition to exclude Ms. Crawford from participating.

42) Gloria Martin, a former co-coordinator of the Family Refuge Center in Lewisburg, West Virginia and member of the defendant Coalition, acknowledged to Ms. Crawford racism was present in the Coalition, and the membership would not tolerate an organization headed by an African-American professional being part of the Coalition or participating in activities involving domestic violence if it could help it, and this discriminatory exclusion because of Ms. Crawford's race has continued to this date.

43) Certain members of the Coalition through their membership with the Coalition intervened to have Ms. Crawford excluded from taking a test administered through the West Virginia Board of Examiners in Counseling.

44) Elizabeth Crawford rebuffed sexual advances of Sue Julian, former co-coordinator of the Coalition, which angered Julian and upon learning of the advances made toward Ms. Crawford, Diane Reese, Julian's lover, and the Coalition's other then co-coordinator, became angry toward Ms. Crawford causing Ms. Crawford and DVCC to be a target of this anger throughout the Coalition and continuing to this day.

45) October 26, 2017 the Coalition held its Annual Purple Ribbon Awards Event at the Clay Center in Charleston in coordination with Domestic Violence Month to honor those who serve victims of domestic violence and to foster awareness of this dilemma,

and as usual Elizabeth Crawford was not made aware of or invited to this event.

46) In 2012 Vonda Spencer, then a DHHR employee and a staff person from YWCA Resolve Family Abuse Domestic Violence Program threatened DVCC clients receiving Aid to Dependent Families payments that if they continued to use DVCC for counseling they would lose these benefits causing them to stop attending DVCC counseling sessions.

COUNT ONE

47) Jurisdiction for this action lies under 28 U.S.C. 1343.

48) Patricia Bailey in her official capacity as Chairperson of the Family Protection Services Board, her predecessor Judy King, Board members and the Board itself have engaged in conduct with the West Virginia Coalition Against Domestic Violence, Inc. and its principal members under color of state law in violation of 42 U.S.C. 1985 to prevent DVCC from becoming a licensed domestic violence program.

49) Ms. Bailey's conduct, like that of her predecessor, as apparent from the adamant nature of their conduct toward the plaintiffs, is also personal and affects the practices and procedures of the agency she heads.

50) This conduct results from these defendants' racial discrimination of plaintiff Elizabeth Crawford, whose independence, education and training as an African-American professional offends these particular defendants causing them to resent DVCC as well.

51) This racial discrimination of the plaintiffs also amounts to a conspiracy to prevent

plaintiffs from fully participating in efforts to combat the domestic violence in this state.

52) The conspiratorial conduct of Ms. Bailey, her predecessor Judy King and the Coalition to exclude DVCC and Ms. Crawford also amounts to racial discrimination toward the local African American community at large because of the client base the plaintiffs serve.

53) Bill Crouch, in his official capacity as Director of DHHR, and his predecessor(s) as well as DHHR itself all acting under color of state law negligently have allowed this conspiracy and racial discrimination to occur thus allowing the denial of DVCC's pre-application for licensure as a domestic violence center to occur.

WHEREFORE, the plaintiffs ask this Court enter an Order directing these defendants to cease and desist from the conduct, conspiracy and racism that discriminates against the plaintiffs and acts to prevent DVCC from obtaining a license from the Family Protection Services Board and to administer this licensing process in a racially neutral and objective manner. The plaintiffs bring this count under 42 U.S.C. 1983, 42 U.S.C. 1985(3) and common law in violation of rights guaranteed both plaintiffs under the Fourteenth Amendment to the United States Constitution.

## COUNT TWO

54) The plaintiffs incorporate by reference all the preceding allegations into this second count of their Complaint.

55) Licensing of an entity as DVCC by the State of West Virginia as a domestic

violence center constitutes a property interest as defined by the laws of the United States of America.

56) The conduct of these defendants constitutes acting under the color of state law to deny DVCC licensure as a domestic violence center in violation of 42 U.S.C. 1983 to deprive it of property or obtain such property without due process of law due to racial discrimination contrary to Section 1 of the Fourteenth Amendment of the United States Constitution.

57) The same conduct by all defendants in the preceding allegation also applies to depriving plaintiff Elizabeth Crawford as founder and primary operative of DVCC of property or opportunity to such without due process of law due to racial discrimination.

WHEREFORE, the plaintiffs ask this Court enter an Order finding the actions of all these defendants to have been in violation of 42 U.S.C. 1983 depriving the plaintiffs of property or opportunity to such without due process of law due to race prohibited by the Fourteenth Amendment of the United States Constitution and further directing these defendants to adjudicate the application of the Domestic Violence Counseling Center (DVCC) in a manner consistent with the foregoing law and constitutional amendment and neutral on the basis of race.

COUNT THREE

58) The plaintiffs incorporate by reference all of the preceding allegations into this third count of their Complaint.

59) The conduct of the defendants described above has been deliberate and under color of law as defined by 42 U.S.C. 1983 which due to race has deprived DVCC and by association, Elizabeth Crawford, property or opportunity to such by denial of equal protection of the law in violation of the Fourteenth Amendment of the United States Constitution.

WHEREFORE, the plaintiffs ask this Court to enter an Order finding the defendants to have been in violation of 42 U.S.C. 1983 for their deliberate conduct based upon race in depriving the plaintiffs of their property interest in or opportunity to such of a license as a domestic violence center without equal protection of the laws in violation of the Fourteenth Amendment of the United States Constitution and further directing the defendants to afford the plaintiffs an opportunity to apply for such licensure consistent with the foregoing law and constitutional amendment in a racially neutral manner.

## COUNT FOUR

60) The plaintiffs incorporate by reference all of the preceding paragraphs of this Complaint into this fourth count.

61) The Family Protection Services Board, its chairperson Patricia Bailey, the West Virginia Department of Health and Human Resources and its Secretary, Bill Crouch, all acting under color of state law pursuant to 42 USC 1983 have denied both of these plaintiffs their rights under the Fourteenth Amendment to the US Constitution of equal protection of the law and of property without due process of law by allowing procedures to exist under their authority which do not allow a party as DVCC any right of appeal to a decision by the Family Protection Services Board denying a pre-application for licensing

as has occurred this year and several other years previously.

WHEREFORE, the plaintiffs ask this Court enter an Order finding a violation of the plaintiffs' rights by not providing for a right of appeal as described in this Count and direct these defendants provide an appeal process or recommend the same to the state legislature as well as any other relief the Court deems appropriate including, but not limited to an Order declaring DVCC be awarded a license as a domestic violence center.

## COUNT FIVE

62) The plaintiffs incorporate by reference all of the preceding paragraphs of this Complaint into this fifth count.

63) The conduct of these defendants as expressed in the foregoing paragraphs amounts to a restraint of trade that precludes DVCC from counseling victims of domestic violence entitling it to damages under 15 U.S.C. 15.

WHEREFORE DVCC asks this Court find a restraint of trade has occurred fostered by the defendants of damages of $2,000,000.00 to DVCC for an award under the above-referenced statute.

## COUNT SIX

64) The plaintiffs restate in their entirety and incorporate by reference all of the preceding allegations into this sixth count of their Complaint.

65) This same restraint of trade caused by these defendants entitles DVCC to

injunctive relief under 15 U.S.C. 26.

WHEREFORE, DVCC asks this Count enter an Order enjoining these defendants from causing it irreparable harm through this restraint of trade to which DVCC has no remedy at law and award it any other damages it deems appropriate.

COUNT SEVEN

66) The plaintiffs incorporate by reference all of the preceding paragraphs of this Complaint into this seventh count.

67) The conduct of defendants Bailey and her predecessor, Judy King, in her individual capacities and the West Virginia Coalition Against Domestic Violence, Inc. unlawfully depriving plaintiff DVCC of licensing has caused that entity to lose public and private funding opportunities in an amount of $100,000.00 annually over the past twenty-two (22) years and continues to cause it to lose funding in this amount.

68) The same conduct by defendant Crouch, DHHR and Family Services Protection Services Board has caused the same damages to DVCC.

WHEREFORE, plaintiff DVCC asks this Court to ascertain and to award it monetary damages of a minimum of $2,000,000.00 for unlawful conduct by defendants Bailey in her individual capacity and the West Virginia Coalition Against Domestic Violence, Inc., jointly and severally for denying it licensing and causing these financial damages. Alternatively, should these same damages be caused by defendants Crouch, DHHR and/or the Family Protection Services Board then DVCC seeks an

assessment of such award against these particular defendants.

COUNT EIGHT

69) Plaintiff Elizabeth Crawford incorporates by reference all preceding paragraphs of this Complaint into this Count Eight.

70) The conduct of defendant Bailey (and predecessor) in her individual capacity and that of the West Virginia Coalition Against Domestic Violence, Inc. toward plaintiff Elizabeth Crawford has been mean-spirited, racially-motivated and humiliating to the extent it has caused Ms. Crawford emotional distress causing physical illness at times to the extent emotional damages are merited by these defendants' wrongful and unlawful conduct.

WHEREFORE plaintiff Elizabeth Crawford asks this Court to award her damages, jointly and severally against the defendant specifically identified in this particular count for the emotional distress they have caused her in the amount of $50,000.00.

The plaintiffs also ask they be awarded their reasonable and necessary attorney fees in bringing this action as well as all reasonable and necessary costs. They also request a trial by jury on any and all applicable claims they have made here that warrant such.

                        DOMESTIC VIOLENCE
                        SURVIVORS SUPPORT GROUP, Inc.
                    d/b/a DOMESTIC VIOLENCE COUNSELING CENTER
                           and ELIZABETH CRAWFORD

                                        By Counsel

\_\_\_\_/s/Richard A. Robb_____
Richard A. Robb (WVSB #3123)
P.O. Box 8747
South Charleston, WV 25303
(304) 744-8231
rrobb@suddenlink.net