UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON

DOMESTIC VIOLENCE SURVIVORS
SUPPORT GROUP, INC., d/b/a
DOMESTIC VIOLENCE COUNSELING
CENTER, and ELIZABETH CRAWFORD,

     Plaintiffs,

v.                                    Civil Action No. 2:18-cv-00452

BILL E. CROUCH, in his official
Capacity as Secretary of the West
Virginia Department of Health and Human
Resources; PATRICIA BAILEY, individually
and in her official capacity as Chairperson
of the Family Protection Services Board, an
entity of the West Virginia Department of
Health and Human Resources; WEST VIRGINIA
DEPARTMENT OF HEALTH AND HUMAN RESOURCES;
THE FAMILY PROTECTION SERVICES BOARD; and
WEST VIRGINIA COALITION AGAINST DOMESTIC
VIOLENCE, INC.,

     Defendants.

MEMORANDUM OPINION AND ORDER

     Pending is the plaintiffs' motion for leave to amend their complaint, filed May 10, 2020 (ECF No. 45).

I.   Background

     The plaintiffs in this case are the Domestic Violence Survivors Support Group, Inc., a West Virginia non-profit corporation doing business as the Domestic Violence Counseling

Center ("DVCC"), and Elizabeth Crawford, an African-American woman who founded and serves as the executive director of DVCC. ECF No. 1 ¶¶ 1-2.  On March 17, 2018, the plaintiffs filed an eight-count complaint against five defendants: the West Virginia Department of Health and Human Services ("DHHR"); Bill E. Crouch, in his official capacity as the Secretary of DHHR; the Family Protection Services Board (the "Board"); Patricia Bailey, individually and in her official capacity as the Board's chairperson; and the West Virginia Coalition Against Domestic Violence, Inc. (the "Coalition").  See id. at 1-17.

The complaint alleges the defendants, particularly Ms. Bailey and the Board, denied the plaintiffs' pre-application to be licensed as a domestic violence program on the ground that the plaintiffs' proposed program did not include a physical shelter component for domestic violence victims.  See id. ¶¶ 11, 14.  The plaintiffs allege that the stated reason for the denial was a pretext, as the relevant statutes and regulations do not require the program to have a physical shelter but, instead, allow licensed programs to refer victims to other entities that have a physical shelter.  See id. ¶¶ 11-20.  The real reason for the denial, the complaint alleges, was racial discrimination. See id. ¶ 14.

The complaint further alleges that the Coalition, a non-profit organization operating licensed domestic violence centers in West Virginia, aided and abetted the other defendants in their discrimination against the plaintiffs.  See id. ¶¶ 7, 34.  The complaint alleges that the Coalition's members engaged in a campaign to spread rumors that DVCC was an unsafe program, to persuade public officials to deny DVCC public funding and recognition, to exclude Ms. Crawford from public events regarding domestic violence, and to verbally and emotionally abuse her.  See id. ¶¶ 35-41, 45.  The complaint also alleges that the Coalition's conduct was motivated by racial animus. See id. ¶ 42.

The defendants moved to dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(1) and (6), arguing that the plaintiffs lacked standing, that some of the defendants were entitled to sovereign or qualified immunity, and that the complaint failed to state claims for which relief could be granted.  See ECF No. 24; ECF No. 26; ECF No. 31.  The court granted one of the motions and granted two others in part and denied them in part. See ECF No. 50 at 75-76.  The court concluded that only one of the complaint's claims, Count 3, survived the motions and only against Secretary Crouch and Ms. Bailey in their official capacities.  See id. at 76.  The court thus dismissed Count 3 as

to the other defendants and dismissed the remaining seven counts as to all the defendants.  See id. at 75–76.

In the meantime, the plaintiffs filed the current motion for leave to amend their complaint.  See ECF No. 45.  The proposed amendment is premised on the March 27, 2020 enactment of the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act"), Pub. L. No. 116-136 (2020), in response to the COVID-19 pandemic.  See ECF No. 45-1 ¶ 2; see also id. ¶¶ 3-4, 7–10, 12.  The proposed amended complaint alleges that the CARES Act included funding for state domestic violence programs and that, in West Virginia, DHHR is responsible for distributing those funds.  See id. ¶¶ 3–4.  It alleges that the plaintiffs requested funds to provide telehealth counseling to their clients, see id. ¶ 7, but were "all but inform[ed]" that "no CARES Act funds would be forthcoming" for them, id. ¶ 8.  The proposed amended complaint further alleges that the plaintiffs' clients are primarily from the African-American community, which is disproportionately affected by the COVID-19 pandemic.  See id. ¶¶ 6–7.  It also alleges that domestic violence centers associated with the Coalition have received CARES Act funds from DHHR, see id. ¶ 9, and that Secretary Crouch is aware that the plaintiffs' largely minority clients are more susceptible to coronavirus, see id. ¶ 10.  Based on these allegations, the

proposed amended complaint would assert six counts, five of which expressly correspond to counts brought in the initial complaint.[1]  See id. ¶¶ 13-25.

    In response, the defendants argue that the plaintiffs' motion for leave to amend should be denied because the proposed amendment would be futile, as all the counts would be subject to dismissal under Rule 12(b).  See ECF No. 46; ECF No. 47.  The motion has been fully briefed and is ripe for disposition.

II.  Legal Standard

    Although the plaintiffs' motion is styled as a motion for leave to amend pursuant to Fed. R. Civ. P. 15(a), the proposed amended complaint is premised on events that happened

---

[1] Counts 1, 2, 5, and 6 of the proposed amended complaint expressly correspond to Counts 1, 2, 7, and 8, respectively, of the initial complaint.  See ECF No. 45-1 ¶¶ 13, 17, 23, 25. Count 4 of the proposed amended complaint expressly corresponds to both Counts 5 and 6 of the initial complaint.  See id. ¶ 20. Although Count 3 of the proposed amended complaint does not expressly correspond to any count in the initial complaint, it is similar in language and structure to Count 3 of the initial complaint.  Compare id. at 4-5, with ECF No. 1 at 13-14.  The plaintiffs state that no count of their proposed amended complaint corresponds to Count 4 of the initial complaint because Count 4 "concerned the lack of an appeal process for licensing" that "does not appear applicable to receipt of CARES Act funds."  ECF No. 45-1 ¶ 20 n.*.

    It appears that Count 1 and Count 4 of the proposed amended complaint would be brought only by DVCC and not by Ms. Crawford, while Count 6 would be brought only by Ms. Crawford and not by DVCC.  See ECF No. 45-1 ¶ 13, 20-21, 24-25.

after the plaintiffs filed their initial complaint, and the
motion is thus properly construed as a motion for leave to file
a supplemental complaint under Fed. R. Civ. P. 15(d).  See
Franks v. Ross, 313 F.3d 184, 198 n.15 (4th Cir. 2002); Ohio
Valley Env't Coal. v. U.S. Army Corps of Eng'rs, 243 F.R.D. 253,
255–56 (S.D.W. Va. 2007); 6 Charles Alan Wright et al., Federal
Practice and Procedure § 1473 (3d ed. 2020).  The distinction is
largely immaterial, however, as the court assesses motions for
leave to amend and motions for leave to supplement under "nearly
identical" standards.  Franks, 313 F.3d at 198 n.15; see also
Ohio Valley, 243 F.R.D. at 255–56; Wright et al., § 1473.

For a motion requesting leave to supplement the
complaint, leave should be freely granted unless good reason
exists to deny it.  See Franks, 313 F.3d at 198 n.15; see also
Ohio Valley, 243 F.R.D. at 256.  Good reason to deny a plaintiff
leave to supplement the complaint exists when, among other
things, the proposed supplement would be futile.  See Durstein
v. Alexander, No. 3:19-0029, 2020 WL 4741094, at *2 (S.D.W. Va.
Aug. 14, 2020); Harwood v. Arch Coal, Inc., No. 2:19-cv-00577,
2020 WL 1977124, at *2 (S.D.W. Va. Apr. 24, 2020); Estate of
Williams-Moore v. All. One Receivables Mgmt., Inc., 335 F. Supp.
2d 636, 644 (M.D.N.C. 2004).  "'A proposed [supplement] is
futile when it is clearly insufficient or frivolous on its

face.'" <u>Harwood</u>, 2020 WL 1977124, at *3 (quoting <u>Save Our Sound</u>
<u>OBX, Inc. v. N.C. Dep't of Transp.</u>, 914 F.3d 213, 228 (4th Cir.
2019)).  A proposed supplement is also futile if the proposed
supplemental complaint fails to satisfy the requirements of the
federal rules, such as Rule 12(b)(1) and Rule 12(b)(6).  <u>See</u>
<u>Durstein</u>, 2020 WL 4741094, at *2; <u>Harwood</u>, 2020 WL 1977124, at
*3; <u>see also</u> <u>United States ex rel. Ahumada v. NISH</u>, 756 F.3d
268, 274, 279, 282 (4th Cir. 2014).

A.   <u>Rule 12(b)(1) Lack of Subject Matter Jurisdiction</u>

          Rule 12(b)(1) allows a defendant to challenge a
complaint for lack of subject matter jurisdiction.  Fed. R. Civ.
P. 12(b)(1).  Federal district courts are courts of limited
subject matter jurisdiction, possessing "only the jurisdiction
authorized them by the United States Constitution and by federal
statute."  <u>U.S. ex rel. Vuyyuru v. Jadhav</u>, 555 F.3d 337, 347
(4th Cir. 2008) (citing <u>Exxon Mobil Corp. v. Allapattah Servs.,</u>
<u>Inc.</u>, 545 U.S. 546, 552 (2005)).  "[T]here is no presumption
that a federal district court has jurisdiction."  <u>Pinkley, Inc.</u>
<u>v. City of Frederick</u>, 191 F.3d 394, 399 (4th Cir. 1999).  The
facts essential to show jurisdiction must be affirmatively
alleged in the complaint.  <u>Dracos v. Hellenic Lines, Ltd.</u>, 762
F.2d 348, 350 (4th Cir. 1985).  If the court lacks subject

matter jurisdiction over any claim, the claim must be dismissed. <u>See</u> <u>Arbaugh v. Y&H Corp.</u>, 546 U.S. 500, 506 (2006).

Constitutional standing is generally addressed under Rule 12(b)(1) because "Article III [of the United States Constitution] gives federal courts jurisdiction only over cases and controversies, and standing is an integral component of the case or controversy requirement." <u>CGM, LLC v. BellSouth Telecommunications, Inc.</u>, 664 F.3d 46, 52 (4th Cir. 2011) (internal citation and quotation marks omitted). To meet the constitutional standing requirement, a plaintiff must satisfy three elements: (1) the plaintiff must have suffered an "injury in fact," which is an invasion of a legally protected interest that is "concrete and particularized," and "actual or imminent, not conjectural or hypothetical"; (2) there must be "a causal connection between the injury and the conduct complained of," meaning that the injury must be "fairly traceable to the challenged action of the defendant," and not the result of the independent action of some third party not before the court; and (3) it must be "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." <u>Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.</u>, 528 U.S. 167, 180–81 (2000) (internal citations and quotation marks

omitted) (citing <u>Lujan v. Defs. of Wildlife</u>, 504 U.S. 555, 560–61 (1992)).

To determine standing at the pleading stage, "general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we presume that general allegations embrace those specific facts that are necessary to support the claim." <u>Lujan</u>, 504 U.S. at 561 (internal citations omitted). The court may accept as true allegations that are supported by adequate factual matter to render them plausible on their face. <u>Beck v. McDonald</u>, 848 F.3d 262, 270 (4th Cir. 2017) (citing <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009)). The same presumption of truth does not apply to conclusory statements and legal conclusions contained in the complaint. <u>Id.</u> (citing <u>Iqbal</u>, 556 U.S. at 678).

## B.   <u>Rule 12(b)(6) Failure to State a Claim</u>

Rule 8(a)(2) of the Federal Rules of Civil Procedure requires that a pleader provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 12(b)(6) correspondingly permits a defendant to challenge a complaint when it "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). The purpose of a Rule 12(b)(6) motion to dismiss is

9

to test the sufficiency of a complaint.  Edwards v. City of

Goldsboro, 178 F.3d 231, 243 (4th Cir. 1999).

Specific facts are not necessary in a pleading, "but

only enough facts to state a claim to relief that is plausible

on its face."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570

(2007).  The pleading "must give the defendant fair notice of

what the . . . claim is and the grounds upon which it rests."

Id. at 555 (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957));

see also Iqbal, 556 U.S. at 678 (explaining that the Rule 8

pleading standard "does not require 'detailed factual

allegations,' but it demands more than an unadorned, the-

defendant-unlawfully-harmed-me accusation").

"[W]hen ruling on a defendant's motion to dismiss, a

judge must accept as true all of the factual allegations

contained in the complaint."  Erickson v. Pardus, 551 U.S. 89,

94 (2007) (citing Twombly, 550 U.S. at 572).  However, the court

is not required to accept as true the legal conclusions set

forth in a plaintiff's complaint.  Edwards, 178 F.3d at 244.

To survive a Rule 12(b)(6) motion to dismiss, "a

complaint must contain sufficient factual matter, accepted as

true, to 'state a claim to relief that is plausible on its

face.'"  See Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S.

at 570).  To contain sufficient factual matter to make a claim

plausible, the factual allegations must "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Id.

### III. Discussion

The court finds it useful to assess the proposed amended complaint by separating the defendants into two groups.

A.  <u>The Board, Ms. Bailey, and the Coalition</u>

(1)  <u>*Standing*</u>

Except for Count 6, the proposed amended complaint premises all its claims on allegations that the plaintiffs' request for CARES Act funding has been denied.  <u>See</u> ECF No. 45-1 ¶¶ 7-8, 12-23; <u>see also</u> ECF No. 45 at 1 (explaining that the "plaintiffs move for leave to amend their [c]omplaint for [the] defendants' conduct related to . . . [the] []CARES[] Act").  The proposed amended complaint also expressly alleges that "the vehicle for distribution of [CARES Act] funds is . . . []<u>DHHR</u>[]" through an agency, the Bureau for Children and Families, that is not named as a defendant in this suit.  ECF No. 45-1 ¶ 4 (emphasis added).  And, it alleges that the plaintiffs requested CARES Act funding "from <u>DHHR</u>" and that a "<u>DHHR</u> [official]," informed the plaintiffs that no CARES Act funding would be forthcoming.  <u>Id.</u> (emphasis added).

11

The proposed amended complaint contains virtually no factual allegations regarding the Board's, Ms. Bailey's, or the Coalition's involvement in the denial of the plaintiffs' request for CARES Act funding.  It contains no factual allegations regarding the Board, and in fact, makes no reference to the Board at all outside the case caption.  It contains no factual allegations regarding Ms. Bailey and only refers to her in passing twice.  See id. ¶¶ 13, 25.  Aside from a conclusory allegation, neither of the two references to Ms. Bailey indicate that she has had any role in the denial of the plaintiffs' request for CARES Act funds.  See id.  The proposed amended complaint contains a single factual allegation regarding the Coalition, namely, that it received CARES Act funding from DHHR. See id. ¶ 9.  But, again, aside from conclusory allegations, the three other references to the Coalition in the proposed amended complaint do not indicate that it has had any role in the denial of the plaintiffs' request for CARES Act funding.  See id. ¶¶ 13-14, 25.

The proposed amended complaint thus fails to allege that the injury complained of—the denial of CARES Act funding—can be fairly traced to the conduct of the Board, Ms. Bailey, or the Coalition.  With respect to these three defendants, the plaintiffs fail to allege the necessary causal connection

between their asserted injury and the conduct complained of largely because the proposed amended complaint does not actually complain of conduct taken by the Board, Ms. Bailey, or the Coalition.  In the few instances in which the proposed amended complaint objects to the conduct of these three defendants, it does so only in conclusory terms.  See id. ¶ 13 (asserting that DVCC brings a "claim . . . against [Ms.] Bailey . . . and [the Coalition] for conspiracy under color of state law . . . to deny DVCC its rightful shares of CARES Act funds due to racial discrimination"); id. ¶ 14 (asserting that "the nature of th[e] conspiracy involves" the same allegations in the initial complaint that the "Coalition . . . racially discriminat[ed] against [the plaintiffs]").  But conclusory allegations like these are insufficient for purposes of standing at the pleading stage.  See Beck, 848 F.3d at 270.

The plaintiffs attempt to avoid this result by arguing that their initial complaint sufficiently alleges the role these three defendants have played in causing the plaintiffs' injury.  See ECF No. 48 at 1–2; ECF No. 49 at 1–2.  However, the initial complaint does nothing to clarify the plaintiffs' allegations against these three defendants with respect to the alleged denial of CARES Act funding.  The initial complaint alleges the Board's and Ms. Bailey's conduct in denying the plaintiffs' pre-

application for a domestic violence program license resulted in the loss of public and private funding opportunities.  <u>See</u> ECF No. 1 ¶ 67.  But neither the initial complaint nor the proposed amended complaint allege that the denial of a license resulted in the denial of CARES Act funding, and the proposed amended complaint in fact alleges that the decision to deny CARES Act funding was made not by the Board or Ms. Bailey but by DHHR and another state agency not named as a defendant in this matter.  <u>See</u> ECF No. 45-1 ¶ 4.  Likewise, although the initial complaint generally alleges that the Coalition has lobbied public officials to deny DVCC public funding, <u>see</u> ECF No. 1 ¶ 36, neither the initial complaint nor the amended complaint alleges that the Coalition lobbied any public official to deny the plaintiffs' request for CARES Act funding.

Because the plaintiffs' proposed amended complaint fails to plausibly allege the injury complained of can be fairly traced to the conduct of the Board, Ms. Bailey, or the Coalition, the court concludes that the plaintiffs would lack standing to bring the first five counts against these three defendants and that supplementing the complaint to bring these counts against these defendants would therefore be futile. Accordingly, the court denies the motion for leave to amend insofar as the motion seeks to supplement the complaint by

adding the first five counts of the proposed amended complaint against the Board, Ms. Bailey, and the Coalition.[2]

    (2)   *Failure to State a Claim*

Count 6 of the proposed amended complaint states in relevant part:

> In a similar manner as Count Eight of the original [c]omplaint [Ms.] Bailey . . . and the [Coalition] continue or have yet to cease and desist from the mean-spirited, racially motivated and humiliating conduct toward Ms. Crawford to the extent it causes this plaintiff emotional distress and often physical illness.  By virtue of it never ceasing and continuing without remorse, apology or even civil restraint Ms. Crawford doubles her earlier claim for emotional damages to $100,000.00 against these particular defendants . . . .

ECF No. 45-1 ¶ 25.

Thus, Count 6 of the proposed amended complaint merely reasserts Count 8 of the plaintiffs' initial complaint and seeks to add, at most, that the alleged conduct of Ms. Bailey and the Coalition underlying Count 8 has continued.  In its October 7, 2020 memorandum opinion and order, the court concluded that Ms.

---

[2] It is not clear whether Count 1 of the proposed amended complaint is intended to be brought against the Board.  <u>Compare</u> ECF No. 45-1 ¶ 13–15 (specifically naming all other defendants), <u>with</u> <u>id.</u> at 4 (asking for order directed against all defendants in prayer for relief for Count 1).  To the extent the plaintiffs intend for Count 1 to be brought against the Board, the court denies their motion for leave to amend to do so for the reasons set out above.

Crawford had standing to bring Count 8 and that Ms. Bailey was
not entitled to qualified immunity with respect Count 8.  See
ECF No. 50 at 12, 27–28, 45.  The court understood Count 8 to
advance a claim for either intentional or negligent infliction
of emotional distress and concluded that the allegations of the
complaint were insufficient to support either claim under the
Rule 12(b)(6) standard.  See id. at 68–75.

The proposed amended complaint provides no further
allegations that would be sufficient to support claims for
intentional or negligent infliction of emotional distress under
Rule 12(b)(6).  Accordingly, the court concludes that Count 6 of
the proposed amended complaint would be subject to dismissal for
failure to state a claim and that supplementing the complaint to
add Count 6 would therefore be futile.  The court thus denies
the motion for leave to amend the complaint to the extent the
plaintiffs seek to amend the complaint to add Count 6.

B.   DHHR and Secretary Crouch

(1)  *Standing*

The proposed amended complaint would assert its first
five counts against DHHR and Secretary Crouch.  See ECF No. 45-1
¶¶ 13–23.  The court turns next to addressing the plaintiffs'
standing to bring these claims.

(i)     Count 4

The proposed amended complaint expressly states that
Count 4 corresponds to both Counts 5 and 6 of the initial
complaint.  See id. ¶ 20.  With respect to Count 4, the proposed
amended complaint asserts that the defendants' denial of CARES
Act funding "constitutes an unlawful restraint of trade," in
violation of 15 U.S.C. § 15, and seeks an injunction preventing
the defendants from engaging in "conduct of this nature in
restraint of trade," pursuant to 15 U.S.C. § 26.  Id. at 5.
Counts 5 and 6 in the initial complaint asserted violations of
the antitrust laws under the Sherman Act, 15 U.S.C. § 1 et seq.,
for which the plaintiffs sought damages and injunctive relief
under 15 U.S.C. §§ 15, 26.  See ECF No. 30 at 5-6.

As the court explained in its October 7, 2020
memorandum opinion and order, "'[i]n a private antitrust action,
a plaintiff must go beyond a showing that it meets the Article
III standing requirements of injury, causation, and
redressability; it must also demonstrate antitrust standing.'"
ECF No. 50 at 22 (quoting Novell, Inc. v. Microsoft Corp., 505
F.3d 302, 310 (4th Cir. 2007)).  "It is not enough . . . for a
plaintiff merely to allege that the defendant violated the
antitrust laws and that he was injured.  The injury suffered by
the plaintiff must be of the type the antitrust laws were

intended to forestall." <u>Blue Shield of Va. v. McCready</u>, 457 U.S. 465, 486 (1982) (internal citations omitted).  The Fourth Circuit applies a five-factor analysis to determine whether a plaintiff has antitrust standing:

> (1) the causal connection between an antitrust violation and harm to the plaintiffs, and whether that harm was intended; (2) whether the harm was of a type that Congress sought to redress in providing a private remedy for violations of the antitrust laws; (3) the directness of the alleged injury; (4) the existence of more direct victims of the alleged antitrust injury; and (5) problems of identifying damages and apportioning them among those directly and indirectly harmed.

<u>Kloth v. Microsoft</u>, 444 F.3d 312, 324 (4th Cir. 2006) (internal citations and quotation marks omitted).

The court concluded that, for Counts 5 and 6 of the initial complaint, the plaintiffs had "fail[ed] to demonstrate that the alleged harm is the type of harm that Congress sought to redress in providing a private remedy for violations of the antitrust laws" because they "fail[ed] to specify which antitrust laws the defendants are alleged to have violated" and provided "no plausible allegations that . . . the alleged actions of the defendants produce anticompetitive results in the relevant market" or "a monopoly."  ECF No. 50 at 24.  The court therefore concluded that the plaintiffs had failed to sufficiently allege antitrust standing and accordingly dismissed

Counts 5 and 6 for lack of subject matter jurisdiction.  See id. at 24–25.

Count 4 of the proposed amended complaint would fail for the same reasons identified by the court's October 7, 2020 memorandum opinion and order with respect to Counts 5 and 6 of the initial complaint.  Neither the initial complaint nor the proposed amended complaint specifies how the defendants' conduct violates the antitrust laws or plausibly alleges that the defendants' conduct produces anticompetitive results or a monopoly.  Thus, the plaintiffs have failed to allege that their injury—denial of CARES Act funds—is the kind of injury that Congress sought to redress by providing a private remedy for violation of the antitrust laws.  Accordingly, the court concludes that the plaintiffs would lack standing to bring Count 4, which would be subject to dismissal for lack of subject matter jurisdiction.  The court thus denies the motion for leave to amend to the extent the plaintiffs seek to amend the complaint to add Count 4.

### (ii)   Count 5

The proposed amended complaint expressly states that Count 5 corresponds to Count 7 of the initial complaint.  See id. ¶ 23.  With respect to Count 5, the proposed amended complaint asserts that "the defendants have caused DVCC to lose

19

what it estimates $75,000.00 to date in CARES Act funds through their unlawful acts and asks for compensatory damages in that same amount." Id.

Count 7 of the initial complaint similarly asserted that the defendants had "unlawfully depriv[ed] plaintiff DVCC" of benefits causing it to lose funding and sought damages "for unlawful conduct by [the] defendants." ECF No. 1 at 16. In its October 7, 2020 memorandum opinion and order, the court concluded that, because neither the allegations of the initial complaint nor the plaintiffs' briefing on the motions to dismiss "articulate[d] any legally-protected interest," the plaintiffs failed to allege an "invasion of [an] interest to establish an injury-in-fact for standing" and that "it is only speculative that the alleged injury will be redressed by a favorable decision." ECF No. 50 at 27. Accordingly, the court dismissed Count 7 for lack of subject matter jurisdiction.

Count 5 of the proposed amended complaint would be subject to dismissal for the same reasons identified by the court with respect to Count 7 of the initial complaint. Count 5's reference to "unlawful conduct" does not articulate any legally-protected interest that can form the basis of an injury in fact or non-speculative relief for purposes of standing. Neither the initial complaint nor any of the plaintiffs'

briefing provides useful clarification.  Accordingly, the court concludes that the plaintiffs would lack standing to bring Count 5, which would be subject to dismissal for lack of subject matter jurisdiction.  The court thus denies the motion for leave to amend to the extent the plaintiffs seek to amend their complaint to add Count 5.

### (iii)  Counts 1, 2, and 3

The proposed amended complaint expressly states that Counts 1 and 2 correspond to Counts 1 and 2, respectively, of the initial complaint.  See ECF No. 45-1 ¶¶ 13-17.  Although the proposed amended complaint does not state that Count 3 corresponds to any count of the initial complaint, it asserts a claim that in language and structure is similar to Count 3 in the initial complaint.  Compare ECF No. 45-1 at 4-5, with ECF No. 1 at 13-14.  Counts 2 and 3 of the proposed amended complaint assert that, by denying the plaintiffs' request for CARES Act funding, the defendants, including DHHR and Secretary Crouch, acting under color of state law, deprived the plaintiffs of property on the basis of race in violation of their Fourteenth Amendment due-process and equal-protection rights and 42 U.S.C. § 1983.  See EFC No. 45-1 at 4-5.  Count 1 of the proposed amended complaint asserts that the defendants, including DHHR and Secretary Crouch, acting under color of state

law, conspired to deny the plaintiffs' request for CARES Act funding on the basis of race in violation of the Fourteenth Amendment and 42 U.S.C. § 1985.  See id. at 3–4.

Counts 1, 2, and 3 of the initial complaint asserted somewhat similar claims that the defendants, acting under color of state law, had conspired to deprive the plaintiffs of property on the basis of race by denying the plaintiffs' pre-application for a domestic violence program license in violation of the Fourteenth Amendment and §§ 1983 and 1985.  See ECF No. 1 at 11–14.  In its October 7, 2020 memorandum opinion and order, the court concluded that the plaintiffs had standing to bring these claims.  See ECF No. 50 at 16–19.

Here, the court likewise concludes that the plaintiffs would have standing to bring Counts 1, 2, and 3 of the proposed amended complaint against DHHR and Secretary Crouch.  The denial of CARES Act funding based on a state agency's and state official's alleged consideration of race constitutes a cognizable injury in fact.  The injury is fairly traceable to DHHR, which the proposed amended complaint alleges is responsible for distributing CARES Act funds, and to Secretary Crouch, in his official capacity as the Secretary of DHHR.  And the relief sought—an injunction to distribute CARES Act funds in a racially neutral manner—would redress the plaintiffs' injury.

## (2)   *Eleventh Amendment Immunity*

DHHR and Secretary Crouch assert that they would be immune from the remaining claims asserted against them in the proposed amended complaint under the Eleventh Amendment.  See ECF No. 47 at 6 n.4.  As the court explained in its October 7, 2020 memorandum opinion and order, "[s]tates enjoy sovereign immunity from suit," and "[t]he Eleventh Amendment," which "enshrines sovereign immunity of the [s]tates by restricting the judicial power of federal courts to hear cases" in which states are sued, extends its protection to "arms of the state" and to "[s]tate officers acting in their official capacity."  ECF No. 50 at 28–29.  The court concluded that DHHR, as an arm of the state, enjoys sovereign immunity in this case pursuant the Eleventh Amendment.  See id. at 30, 33.  However, the court concluded that, under Ex parte Young, 209 U.S. 123 (1908), Secretary Crouch did not enjoy immunity from suit in his official capacity because the relief the plaintiffs seek in Counts 1, 2, and 3 of the initial complaint is prospective, injunctive relief, the claims concern an ongoing constitutional violation based on racial discrimination, and Secretary Crouch has a sufficient connection to the state agency responsible for the alleged violation.  See id. at 33-41.

Here, for the same reasons set forth in its October 7, 2020 memorandum opinion and order, the court concludes that DHHR is an arm of the state that enjoys sovereign immunity from the claims asserted in the proposed amended complaint, pursuant to the Eleventh Amendment.  Accordingly, the remaining claims in the proposed amended complaint against DHHR would be subject to dismissal, and the court concludes that amending the complaint to include such claims would be futile.  The court thus denies the motion for leave to amend the complaint to the extent the plaintiffs seek to add the remaining claims against DHHR to their complaint.

However, for the reasons set forth in its October 7, 2020 memorandum opinion and order, the court concludes that, pursuant to Ex parte Young, Secretary Crouch is not protected by sovereign immunity.  Like Counts 1, 2, and 3 of the initial complaint, Counts 1, 2, and 3 of the proposed amended complaint seek prospective, injunctive relief for ongoing constitutional violations based on racial discrimination, and Secretary Crouch has a sufficient connection to the state agency—here, DHHR— alleged to be responsible for the violation.

### (3)   *Failure to State a Claim*

Having concluded that the plaintiffs would have standing to bring Counts 1, 2, and 3 of the amended complaint

against Secretary Crouch and that Secretary Crouch would not
enjoy Eleventh Amendment immunity from these claims, the court
turns to assess whether Counts 1, 2, and 3 would be subject to
dismissal for failure to state a claim pursuant to Rule
12(b)(6).

### (i)   Count 1

Count 1 of the initial complaint alleged that
Secretary Crouch negligently allowed racial discrimination to
occur, which resulted in the denial of the plaintiffs' pre-
application for a domestic violence program license.  See ECF
No. 1 ¶ 53.  The court dismissed Count 1 of the initial
complaint against Secretary Crouch pursuant to Rule 12(b)(6).
ECF No. 50 at 50.  The court explained that, "[a]cting
negligently to allow an alleged conspiracy" does not give rise
to liability because "[c]onspiracy is an intentional act, not a
negligent one."  Id. at 49–50 (citing Young v. F.D.I.C., 103
F.3d 1180, 1190 (4th Cir. 1997); Mallamo v. Town of Rivesville,
477 S.E.2d 525, 533 (W. Va. 1996)).  Because the plaintiffs had
alleged only negligence and had not alleged that "Secretary
Crouch in in any way participated in a joint plan of action,"
the court concluded dismissal was appropriate.  Id. at 49.

Count 1 of the proposed amended complaint would also
assert that Secretary Crouch was "negligent . . . for allowing

the [alleged] racial discrimination" to occur.  ECF No. 45-1 ¶ 15.  Neither the initial complaint nor the proposed amended complaint alleges that Secretary Crouch participated in any way in a joint plan of action.  Accordingly, for the same reasons set forth in its October 7, 2020 memorandum and opinion, the court concludes that, with respect to Secretary Crouch, Count 1 would be subject to dismissal for failure to state a claim and that amending the complaint to add Count 1 would therefore be futile.  Thus, the motion for leave to amend the complaint is denied to the extent the plaintiffs seek to add Count 1 against Secretary Crouch to their complaint.

### (ii)  Count 2

Count 2 of the proposed amended complaint would assert a Fourteenth Amendment due process claim against Secretary Crouch and the other defendants based on the denial of plaintiffs' request for CARES Act funds.  See ECF No. 45−1 at 4. To state a claim for violation of procedural due process rights, a plaintiff must plausibly allege "(1) a cognizable . . . property interest; (2) the deprivation of that interest by some form of state action; and (3) that the procedures employed were constitutionally inadequate." Accident, Injury & Rehab., PC v. Azar, 943 F.3d 195, 203 (4th Cir. 2019) (internal quotation

marks omitted) (quoting Iota Xi Chapter of Sigma Chi Fraternity
v. Patterson, 566 F.3d 138, 145 (4th Cir. 2009)).

A cognizable "'property interest must be more than a
'unilateral expectation'; it must be a 'legitimate claim of
entitlement.'" L.M. Everhart Constr., Inc. v. Jefferson Cnty.
Planning Comm'n, 2 F.3d 48, 51 (4th Cir. 1993) (quoting Biser v.
Town of Bel Air, 991 F.2d 100, 104 (4th Cir. 1993)).  "[S]uch
interests do not arise from the Fourteenth Amendment itself but
rather stem from an independent source." Siena Corp. v. Mayor &
City Council of Rockville, 873 F.3d 456, 461 (4th Cir. 2017)
(internal quotation marks omitted) (quoting Bd. of Regents v.
Roth, 408 U.S. 564, 577 (1972)).

The court concludes that the proposed amended
complaint does not plausibly state a due process claim because
it fails to sufficiently allege deprivation of a cognizable
property interest.  Although the plaintiffs allege that they
have been deprived of a property interest, namely, "federal
funding" under the CARES Act, ECF No. 45-1 ¶ 17, they do not
allege that they are entitled to these funds or plead any facts
implying entitlement.  At most, the plaintiffs allege that they
have an acute need for the funds because the primarily African-
American clientele they serve is disproportionately and more
severely affected by the COVID-19 pandemic than are other

groups.  See id. ¶¶ 6-7, 10.  But an "abstract need or desire" for funding is not sufficient to show that such funding constitutes a cognizable property interest for purposes of a due process claim.  Roth, 408 U.S. at 577.  In the absence of allegations explaining how the plaintiffs have a legitimate claim of entitlement to CARES Act funding, Count 2 would fail to state a claim.  See Ellis v. Thornsbury, No. 2:14-cv-24641, 2015 WL 13039641, at *7 (S.D.W. Va. Sept. 25, 2015) (concluding the complaint failed to state a cognizable property interest because it did "not allege[] why [the plaintiffs] were entitled" to putative property interest or provide "any elaboration demonstrating that [putative property interest] was an entitlement"); Herman v. Lackey, No. 2007 WL 9735415, at *3 (W.D.N.C. June 7, 2007) (dismissing due-process claim in part because the "[c]omplaint allege[d] nothing more than a unilateral expectation that the license would be issued").

Accordingly, the court concludes that, with respect to Secretary Crouch, Count 2 of the proposed amended complaint would be subject to dismissal for failure to state a claim. Thus, the motion for leave to amend the complaint is denied to the extent the plaintiffs seek leave to amend their complaint to add Count 2 against Secretary Crouch.

(iii) *Count 3*

Count 3 of the proposed amended complaint would assert, pursuant to § 1983, a Fourteenth Amendment equal protection claim against Secretary Crouch and other defendants based on the denial of CARES Act funds.  See ECF No. 45-1 at 4-5.  To state a claim for an equal protection violation, "a plaintiff must plausibly allege first 'that [s]he has been treated differently from others with whom [s]he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination.'"  Fauconier v. Clarke, 966 F.3d 265, 277 (4th Cir. 2020) (quoting Martin v. Duffy, 858 F.3d 239, 248 (4th Cir. 2017)).  If these facts are plausibly alleged, then "the plaintiff must also plausibly allege that the disparity was not justified under the appropriate level of scrutiny."  Id.

To plausibly state an equal-protection claim, then, "a plaintiff must [allege] not only that similarly situated individuals were treated differently," but also that the difference in treatment was the result of intentional or purposeful discrimination.  Cent. Radio Co., Inc. v. City of Norfolk, 811 F.3d 625, 635 (4th Cir. 2016).  Thus, if a plaintiff asserts "that a statute has been administered . . . discriminatorily, more must be [alleged] than the fact that a

29

benefit was denied to one person while conferred on another.  A
violation is established only if the plaintiff [alleges] that
the state [official] intended to discriminate." Sylvia Dev.
Corp. v. Calvert Cnty., 48 F.3d 810, 819 (4th Cir. 1995)
(emphasis in original) (internal citation omitted); see Snowden
v. Hughes, 321 U.S. 1, 8 (1944) ("The unlawful administration by
state officers of a state statute fair on its face, resulting in
its unequal application to those who are entitled to be treated
alike, is not a denial of equal protection unless there is shown
to be present in it an element of intentional or purposeful
discrimination.").  A plaintiff need not allege that
discrimination is the defendant's sole motivation, but the
plaintiff must assert the requisite discriminatory intent with
more than mere conclusory allegations.  See Pronin v. Johnson,
628 F. App'x 160, 164 (4th Cir. 2015); Johnson v. Holmes, 204 F.
Supp. 3d 880, 890 (W.D. Va. 2016).

       The proposed amended complaint fails to plausibly
allege that Secretary Crouch acted with the requisite
discriminatory intent or purpose.  Although, in Count 3, the
plaintiffs allege that they were denied CARES Act funding based
upon considerations of race, see ECF No. 45-1 at 4-5, the
proposed amended complaint contains no allegation suggesting
that Secretary Crouch intended to discriminate against the

plaintiffs based on race.  In fact, the sole factual allegation in the proposed amended complaint regarding Secretary Crouch suggests just the opposite.  See ECF No. 45-1 ¶ 10 (alleging that Secretary Crouch "recognized" that the COVID-19 pandemic has disproportionately affected minority communities and that he sought to "assur[e] minority group leaders" that he would "further investigat[e] . . . the matter").  The initial complaint likewise does not allege that Secretary Crouch acted with discriminatory intent and, in fact, contains no factual allegations regarding Secretary Crouch aside from those regarding his role as DHHR's current secretary.

Further, the proposed amended complaint does not plausibly allege that DHHR's denial of the plaintiffs' request for CARES Act funding resulted from discriminatory intent.  At most, the proposed amended complaint alleges that DHHR denied funding to plaintiffs, whose clients are primarily African American, and granted funding to other domestic violence programs.  See id. ¶¶ 7-9.  But these allegations amount to little more than an assertion that funding was denied to some entities and granted to others, an assertion that is insufficient by itself to state an equal-protection claim.  See Snowden, 321 U.S. at 8; Sylvia Dev. Corp., 48 F.3d 810 at 819.

31

The initial complaint likewise contains no factual allegations suggesting that DHHR has acted with discriminatory intent.[3]

The only allegations in the proposed amended complaint and the initial complaint that might be understood to charge Secretary Crouch and DHHR with discriminatory intent are wholly conclusory and unsupported by factual allegations.  See, e.g., ECF No. 1 ¶¶ 53, 61; ECF No. 45-1 ¶¶ 14-15.  Conclusory allegations like these are insufficient to withstand a Rule 12(b)(6) motion to dismiss.  See Pronin, 628 F. App'x at 164; Johnson, 204 F. Supp. 3d at 890.

Accordingly, the court concludes that, with respect to Secretary Crouch, Count 3 of the proposed amended complaint would be subject to dismissal pursuant to Rule 12(b)(6) for failure to state a claim and that amending the complaint to

---

[3] In its October 7, 2020 memorandum opinion and order, the court denied the defendants' motions to dismiss an equal-protection claim against Secretary Crouch, in his official capacity, based on the Board's denial of a domestic violence program license. See ECF No. 50 at 76.  As explained therein, the court concluded that Secretary Crouch was subject to suit based on the Board's discriminatory motivation in denying the license, which the initial complaint sufficiently alleges, see id. at 61-65, in conjunction with his role as the secretary of DHHR, in which capacity he may be deemed responsible for the Board's conduct, see id. at 40, 65-66.  Here, however, with respect to the denial of CARES Act funding, the plaintiffs have failed to sufficiently allege that DHHR acted with the discriminatory intent necessary to make Secretary Crouch subject to an equal-protection claim based on his role as DHHR's secretary.

include Count 3 would therefore be futile.  The plaintiffs'
motion for leave to amend their complaint is thus denied to the
extent they seek to add Count 3 against Secretary Crouch.

### IV.   Conclusion

For the foregoing reasons, it is ORDERED that the
plaintiffs' motion for leave to amend their complaint (ECF No.
45) be, and hereby it is, denied.

The Clerk is directed to transmit copies of this
memorandum opinion and order to all counsel of record and any
unrepresented party.

ENTER: October 19, 2020

John T. Copenhaver, Jr.
Senior United States District Judge